## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

MELINDA ATENCIO, as Personal Representative
Of the Estate of STACY LYNN, GAMBLER,

      Plaintiff,

v.                                      Case No. 1:17-CV-00617 WJ/KK

BOARD OF COUNTY COMMISSIONERS OF
SANTA FE COUNTY, BOARD OF COUNTY
COMMISSIONERS OF RIO ARRIBA COUNTY,
LARRY DEYAPP, MARK CALDWELL,
SOUTHWEST CORRECTIONAL MEDICAL GROUP, INC.,
GUY JORDAN, ROBERT MANZANARES,
JIMMY MARTINEZ, EDWARD MERCURE,
MARIA DEAGUERO, CHRIS MARTINEZ
LORENZO SANCHEZ, JOHN HOWIE,
ESTEVAN GALLEGOS, JOHN/JANE DOE 1,
JOHN/JANE DOE 2, JOHN/JANE DOE 3,
and JOHN/JANE DOE 4,

      Defendants.

## FIRST AMENDED COMPLAINT

Plaintiff Stacy Lynn Gambler, by and through her attorneys, Rothstein Donatelli LLP, brings the following complaint for damages against Defendants pursuant to 42 U.S.C. §1983; the New Mexico Wrongful Death Act, NMSA 1978, §41-2-1 *et seq.*; the New Mexico Tort Claims Act, NMSA 1978, §41-4-1 *et seq.*; and the common law and states as follows:

### PARTIES

1.    Plaintiff Melinda Atencio is a resident of Rio Arriba County, New Mexico. Ms. Atencio was appointed by the First Judicial District Court of New Mexico as the Wrongful Death Personal Representative of the Estate of Stacy Lynn Gambler on February 28, 2017, and is suing

in her representative capacity on behalf of said Estate.

2.      Stacy Lynn Gambler (hereinafter referred to as "Ms. Gambler") died on May 3, 2015, at the Christus St. Vincent Regional Medical Center in the City of Santa Fe, County of Santa Fe, State of New Mexico. At the time of her death, Ms. Gambler was thirty-six (36) years of age and incarcerated at the Rio Arriba County Adult Detention Facility in Tierra Amarilla, New Mexico (hereinafter referred to as "RACADF"). Prior thereto, between April 18, 2015, and April 24, 2015, Ms. Gambler was incarcerated at the Santa Fe County Adult Detention Facility in Santa Fe, New Mexico (hereinafter referred to as "SFCADF").

3.      Defendant Board of County Commissioners of Santa Fe County (hereinafter referred to as "Santa Fe County") is a political subdivision of the State of New Mexico. Pursuant to NMSA 1978, §4-46-1, all suits or proceedings against a county are to be brought in the name of the board of county commissioners of that county. At all times material hereto, Santa Fe County was a governmental entity and local public body as those terms are defined in the New Mexico Tort Claims Act, NMSA 1978, §41-4-3. At all times material hereto, Santa Fe County owned, operated, supervised, directed and controlled the SFCADF located in Santa Fe, New Mexico. Pursuant to NMSA 1978, §4-44-19; NMSA 1978, §§33-3-3 through 33-3-8; and NMSA 1978, §33-3-13, Santa Fe County was statutorily obliged to provide for the confinement of inmates incarcerated under its jurisdiction and a corresponding obligation to appropriate funds and otherwise provide the necessary funding to maintain and operate a facility for the safe incarceration of inmates under its jurisdiction. Santa Fe County is charged with responsibility to administer, manage, and supervise the health care delivery system at SFCADF.

4.      Defendant Board of County Commissioners of Rio Arriba County (hereinafter referred to as "Rio Arriba County") is a political subdivision of the State of New Mexico. Pursuant

to NMSA 1978, §4-46-1, all suits or proceedings against a county are to be brought in the name of the board of county commissioners of that county. At all times material hereto, Rio Arriba County was a governmental entity and local public body as those terms are defined in the New Mexico Tort Claims Act, NMSA 1978, §41-4-3. At all times material hereto, Rio Arriba County owned, operated, supervised, directed and controlled the RACADF located in Tierra Amarilla, New Mexico. Pursuant to NMSA 1978, §4-44-19; NMSA 1978, §§33-3-3 through 33-3-8; and NMSA 1978, §33-3-13, Rio Arriba County was statutorily obliged to provide for the confinement of inmates incarcerated under its jurisdiction and a corresponding obligation to appropriate funds and otherwise provide the necessary funding to maintain and operate a facility for the safe incarceration of inmates under its jurisdiction. Rio Arriba County is charged with the responsibility to administer, manage, and supervise the health care delivery system at the RACADF.

5.     At all times material hereto, Defendant Mark Caldwell was, upon information and belief, a resident of Santa Fe County, New Mexico, employed by Santa Fe County as the warden of the SFCADF. At all times material hereto, Defendant Caldwell supervised the operation and daily management of the SFCADF, was responsible for the policies, practices and customs of the SFCADF and the implementation of, and adherence to, the same. Defendant Caldwell was further responsible for the screening, hiring, training, supervision, discipline, counseling and control of SFCADF officers, staff, contractors, agents and employees. Defendant Caldwell is sued in both his personal and official capacity.

6.     Defendant Larry DeYapp is, upon information and belief, a resident of the County of Rio Arriba employed by Rio Arriba County as the detention administrator of RACADF. At all times material hereto, Defendant DeYapp supervised the operation and daily management of the RACADF, was responsible for the policies, practices and customs of the RACADF and the

3

implementation of, and adherence to, the same. Defendant DeYapp was further responsible for the screening, hiring, training, supervision, discipline, counseling and control of RACADF officers, staff, contractors, agents and employees.  Defendant DeYapp is sued in both his personal and official capacity.

7.      Defendant Southwest Correctional Medical Group, Inc. (hereinafter referred to as "Southwest Medical") is a foreign corporation registered in the State of Delaware and with its principle place of business in California licensed to do conduct business in the State of New Mexico. Defendant Southwest Medical's agent for service of process is CT Corporation System, 206 South Coronado Ave., Espanola, New Mexico 87532-2792. At all times material hereto, Defendant Southwest Medical had entered into a written contract with Rio Arriba County to provide medical services to inmates and detainees at the RACADF, and supervised and implemented such care. Southwest Medical performed a typically governmental function by assuming responsibility for inmate health care with duties, under both common law and the written contract entered into with Rio Arriba County, to provide reasonable medical care and emergency care to inmates at RACADF, including Ms. Gambler. Southwest Medical is an employer within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§2000e *et seq.*

8.      Defendant Guy Jordan is, upon information and belief, a resident of the County of Rio Arriba employed by Rio Arriba County as a supervising correctional officer at the RACADF. At all times material hereto, Defendant Jordan acted as a supervising overseeing the operation and daily management of correctional officers within the booking unit where Ms. Gambler was incarcerated at the RACADF. Upon information and belief, Defendant Jordan was responsible for the policies, practices and customs of the RACADF in his specific areas, and the implementation of, and adherence to, the same. Defendant Jordan is sued in both his personal and official capacity.

4

9.     Defendant Jimmy Martinez is, upon information and belief, a resident of the County of Rio Arriba employed by Rio Arriba County as a supervising correctional officer at the RACADF. At all times material hereto, Defendant J. Martinez acted as a supervising overseeing the operation and daily management of correctional officers within the booking unit where Ms. Gambler was incarcerated at the RACADF. Upon information and belief, Defendant J. Martinez was responsible for the policies, practices and customs of the RACADF in his area, and the implementation of, and adherence to, the same. Defendant J. Martinez is sued in both his personal and official capacity.

10.    Defendant Edward Mercure is, upon information and belief, a resident of the County of Rio Arriba employed by Rio Arriba County as a supervising correctional officer at the RACADF. At all times material hereto, Defendant Mercure acted as a supervising overseeing the operation and daily management of correctional officers within the booking unit where Ms. Gambler was incarcerated at the RACADF. Upon information and belief, Defendant Mercure was responsible for the policies, practices and customs of the RACADF in his areas, and the implementation of, and adherence to, the same. Defendant Mercure is sued in both his personal and official capacity.

11.    Defendant Robert Manzanares is, upon information and belief, a resident of the County of Rio Arriba employed by Rio Arriba County as a supervising correctional officer at the RACADF. At all times material hereto, Defendant Manzanares acted as a supervising overseeing the operation and daily management of correctional officers within the booking unit where Ms. Gambler was incarcerated at the RACADF. Upon information and belief, Defendant Manzanares was responsible for the policies, practices and customs of the RACADF in his area, and the implementation of, and adherence to, the same. Defendant Manzanares is sued in both his personal

and official capacity.

12.     Defendant Maria Deaguero is, upon information and belief, a resident of the County of Rio Arriba employed by Rio Arriba County as a supervising correctional officer at the RACADF. At all times material hereto, Defendant Deaguero acted as a supervising overseeing the operation and daily management of correctional officers within the booking unit where Ms. Gambler was incarcerated at the RACADF. Upon information and belief, Defendant DeAguero was responsible for the policies, practices and customs of the RACADF in her area, and the implementation of, and adherence to, the same. Defendant DeAguero is sued in both her personal and official capacity.

13.     Defendant Christopher Martinez is, upon information and belief, a resident of the County of Rio Arriba employed by Rio Arriba County as a correctional officer at the RACADF. Defendant C. Martinez acted as a correctional officer overseeing inmates in the booking area of RACADF during the time period in which Ms. Gambler was incarcerated at the RACADF.

14.     Defendant Lorenzo Sanchez is, upon information and belief, a resident of the County of Rio Arriba employed by Rio Arriba County as a correctional officer at the RACADF. Defendant Sanchez acted as a correctional officer overseeing inmates in the booking area of RACADF during the time period in which Ms. Gambler was incarcerated at the RACADF.

15.     Defendant John Howie is, upon information and belief, a resident of the County of Rio Arriba employed by Rio Arriba County as a correctional officer at the RACADF. Defendant Howie acted as a correctional officer overseeing inmates in the booking area of RACADF during the time period in which Ms. Gambler was incarcerated at the RACADF.

16.     Defendant Estevan Gallegos is, upon information and belief, a resident of the County of Rio Arriba employed by Rio Arriba County as a correctional officer at the RACADF.

Defendant Gallegos acted as a correctional officer overseeing inmates in the booking area of RACADF during the time period in which Ms. Gambler was incarcerated at the RACADF.

17.     Upon information and belief, at all times material hereto, Defendant John/Jane Doe 1 was employed as Southwest Medical personnel assigned to provide medical services at RACADF. After investigation and inquiry, Plaintiff is presently unaware of the identity of Defendant John/Jane Doe 1 and therefore sues this Defendant by a fictitious name. Plaintiff will amend this complaint once the true identity of this Defendant, or Defendants, should there be more than one, is uncovered during discovery.

18.     Upon information and belief, at all times material hereto, Defendant John/Jane Doe 2 was employed as Rio Arriba County personnel assigned to provide correctional services at RACADF. After investigation and inquiry, Plaintiff is presently unaware of the identity of Defendant John/Jane Doe 2 and therefore sues this Defendant by a fictitious name. Plaintiff will amend this complaint once the true identity of this Defendant, or Defendants, should there be more than one, is uncovered during discovery.

19.     Upon information and belief, at all times material hereto, Defendant John/Jane Doe 3 was employed as Santa Fe County personnel assigned to provide correctional services at SFCADF. After investigation and inquiry, Plaintiff is presently unaware of the identity of Defendant John/Jane Doe 2 and therefore sues this Defendant by a fictitious name. Plaintiff will amend this complaint once the true identity of this Defendant, or Defendants, should there be more than one, is uncovered during discovery.

20.     Upon information and belief, at all times material hereto, Defendant John/Jane Doe 4 was employed as Santa Fe County personnel assigned to provide health services to inmates and detainees at SFCADF. After investigation and inquiry, Plaintiff is presently unaware of the identity

of Defendant John/Jane Doe 4 and therefore sues this Defendant by a fictitious name. Plaintiff will amend this complaint once the true identity of this Defendant, or Defendants, should there be more than one, is uncovered during discovery.

21.     At all times material hereto, the individual Defendants acted under color of law and/or policies, procedures and/or customs of Santa Fe County, Rio Arriba County, and within the course and scope of their employment.

22.     Defendants Santa Fe County and Caldwell were responsible for the screening, hiring, training, monitoring, supervision, and disciplining of subordinate employees at the SFCADF.

23.     Defendants Santa Fe County and Caldwell were responsible for the policy-making activities and supervision of subordinate officers and contractors of the SFCADF.

24.     Defendants Rio Arriba County, Southwest Medical and/or DeYapp were responsible for the screening, hiring, training, monitoring, supervision, and disciplining of subordinate employees at the RACADF and Southwest Medical.

25.     Defendants Rio Arriba County and De Yapp were responsible for the policy-making activities and supervision of subordinate officers and contractors of the RACADF.

26.     Defendants Jordan, Mercure, Manzanares, and J. Martinez were responsible for the policy-making activities and supervision of subordinate officers of the RACADF in the area in which Ms. Gambler was incarcerated.

27.     At all times material hereto, Defendants Santa Fe County and Caldwell, individually and/or acting through their agents, officers, employees, and contractors, acted in concert with one another pursuant to a common plan or objective, and each of the Santa Fe Defendants is responsible for the acts and omissions of the other Defendants and their agents,

officers, employees, and contractors under the doctrine of respondeat superior, aided-in-agency, and other doctrines of vicarious liability.

28.     At all times material hereto, Defendants Rio Arriba County, Lujan, DeYapp and Southwest Medical, individually and/or acting through their agents, officers, employees, and contractors, acted in concert with one another pursuant to a common plan or objective, and each of the said Defendants is responsible for the acts and omissions of the other Defendants and their agents, officers, employees, and contractors under the doctrine of respondeat superior, aided-in-agency, and other doctrines of vicarious liability.

29.     At all times material hereto, Defendants Santa Fe County, Caldwell, Rio Arriba County, Lujan, DeYapp and Southwest Medical, individually and/or acting through their agents, officers, employees, and contractors, acted in concert with one another pursuant to a common plan or objective, and each of said Defendants is responsible for the acts and omissions of the other Defendants and their agents, officers, employees, and contractors under the doctrine of respondeat superior, aided-in-agency, and other doctrines of vicarious liability.

30.     At all times material hereto, Defendant Rio Arriba County operated the RACADF, by and through Defendant DeYapp, who served as Detention Administrator of RACADF, and Defendants Jordan, Manzanares, J. Martinez, Mercure, and Deagure, who served as correctional supervisors at the RACADF, and Defendants C. Martinez, Sanchez, Howie, Gallegos and John/Jane Doe 2, who served as correctional officers at the RACADF (hereinafter collectively "Rio Arriba County Defendants).

31.     At all times material hereto, Defendant Santa Fe County operated the SFCADF, by and through Defendant Caldwell, who served as Warden of SFCADF, and Defendants John/Jane Doe 1 and John/Jane Doe 2, who served as correctional officers and/or medical personnel at the

SFCADF (hereinafter collectively "Santa Fe County Defendants").

## JURISDICTION AND VENUE

32.     Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

33.     This Court has jurisdiction over the subject matter and parties to this action pursuant to the Court's general jurisdiction, N.M. Const. art. VI, §13, NMSA 1978, §38-3-1.1, NMSA 1978, §41-4-18.

34.     This Complaint is timely pursuant to NMSA 1978, §41-4-15 and 42 U.S.C. §1988.

35.     All of the acts complained of herein which constitute the basis for liability on the claims brought pursuant to the New Mexico Tort Claims Act come within the scope of the waivers of immunity contained within the act.

36.     Plaintiff has given written notice of the claims contained herein pursuant to the New Mexico Tort Claims Act in compliance with the requirements of the act, NMSA 1978, § 41-4-16.

37.     All notice requirements under the New Mexico Tort Claims Act were properly complied with because all applicable Defendants had actual notice within ninety (90) days of the events that gave rise to the claims brought forth herein.

## FACTS COMMON TO ALL CAUSES OF ACTION

38.     Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully stated herein.

39.     Ms. Gambler was arrested by the Santa Clara Pueblo Police Department on or about April 18, 2015, pursuant to a pair of bench warrants issued by the Rio Arriba Magistrate Court.

40.     The first warrant, issued on or about July 17, 2014, in cause number M-43-TR-2014-00120, related to two traffic citations concerning driving without a valid license and included a $500 cash only bond requirement. Said case remained pending as of Ms. Gambler's arrest on

April 18, 2015.

41.     The second warrant, issued January 30, 2015, in cause number M-43-TR-2014-02127, concerned $86.00 in unpaid assessments relating to a citation for no seat belt. Ms. Gambler was adjudicated guilty of the no seat belt violation by virtue of a no contest plea entered on October 6, 2014, before Magistrate Judge Rudy Martin in Rio Arriba Magistrate Court. According to New Mexico law, failure to wear a seat belt is not an arrestable offense. *United States v. Guzman*, 864 F.2d 1512 (10th Cir. 1988).

42.     On April 19, 2015, Ms. Gambler was booked into the SFCADF on the two warrants.

43.     According to documentation from SFCADF, the facility received Ms. Gambler following her release from emergency hospitalization.

44.     A medical intake examination of Ms. Gambler conducted at the SFCADF showed serious medical concerns, including an apparent infection requiring treatment with strong antibiotics and documented hepatitis C, a liver disease that must be considered and may require medical providers to avoid otherwise appropriate treatments due to impaired liver function, alcohol abuse, alcohol withdrawal, and related medical issues. SFCADF officials and medical staff were also aware Ms. Gambler had a history of concerns related to anemia.

45.     When Ms. Gambler was booked into SFCADF, correctional and medical staff at SFCADF had documentation of Ms. Gambler's history of alcohol withdrawal and other factors indicating she was a risk to develop severe and potentially fatal alcohol withdrawal, including seizures and delirium tremens.

46.     Ms. Gambler was placed within the medical unit of SFCADF, where she remained until April 24, 2015. Ms. Gambler was supposed to be subject to observation every fifteen minutes while housed in the medical unit at SFCADF.

47.     Ms. Gambler was prescribed and provided chlordiazeproxide/Librium while at SFCADF for treatment in regards to alcohol withdrawal. During her time at SFCADF, Ms. Gambler was also provided other medications, including medications that may negatively impact individuals with liver concerns such as hepatitis C and cause clotting difficulty, particular in individuals with impaired liver function.

48.     On April 20, 2015, John/Jane Doe 4 documented that Ms. Gambler was suffering from epigastric pain, unable to eat, had a swollen face, exhibited tremors, bruising of the abdomen, and other signs of distress while she was being held at the SFCADF. Ms. Gambler was continued on SFCADF's alcohol withdrawal protocol.

49.     By April 22, 2015, John/Jane Doe 4 documented that Ms. Gambler's heart rate had increased dramatically during her incarceration at the SFCADF.

50.     On April 23, 2015, John/Jane Doe 4 documented that Ms. Gambler had become disoriented, including a lack of orientation to place and time.

51.     On April 24, 2015, at approximately 1:20 p.m., John/Jane Doe 4 documented that Ms. Gambler was drowsy, had decreased appetite, a significant headache, total body aches, and was dry heaving.

52.     Despite Ms. Gambler's increasing signs of medical distress and her known medical history and serious medical concerns, SFCADF did not provide medical assistance to Ms. Gambler other than over-the-counter pain killers and alcohol withdrawal medication.

53.     Upon information and belief, medical providers at the SFCADF knew, or should have known, that other, severe and potentially fatal medical problems can mimic some symptoms of alcohol withdrawal, including liver failure and gastrointestinal bleeding, obvious concerns for an individual with a known history of liver disease such as Ms. Gambler.

54.     On April 24, 2015, the Rio Arriba County Defendants requested in writing that Ms. Gambler be released from SFCADF into the custody of correctional officers of the Rio Arriba County in order to transport her to the RACADF pursuant to the two warrants. Said written request specifically requested SFCADF provide RACADF with all "paperwork (including any medical information if possible)…ready to transport" with Ms. Gambler.

55.     On Friday, April 24, 2015, at approximately 6:30 p.m., the Santa Fe County Defendants transferred Ms. Gambler to the custody of the Rio Arriba County Defendants, and she was transported to the RACADF by agents of the Rio Arriba County Defendants for booking.

56.     A Medical Summary of Inmate in Transit form signed by John/Jane Doe 4 concerning Ms. Gambler indicated Ms. Gambler's "CURRENT MEDICAL PROBLEMS" included "Post Alcohol Delirium." However, said Medical Summary of Inmate in Transit form was dated April 1, 2015.

57.     Alcohol withdrawal delirium is a severe medical condition that can be fatal if not addressed in an appropriate medical environment.

58.     Medical providers, such as Defendants Southwest Medical and John/Jane Doe 4, are, or should be, aware that other, severe and potentially fatal medical problems can mimic some symptoms of alcohol withdrawal, including liver failure and gastrointestinal bleeding.

59.     In addition to having been confined within the medical unit at SFCADF, at the time of her transfer to RACADF by the Rio Arriba County Defendants, Ms. Gambler exhibited other signs of serious medical issues and needs, such as severely slurred speech, disorientation, and pain.

60.     At least one of the inmates/detainees transported to RACADF with Ms. Gambler noted that Ms. Gambler was obviously in need of medical assistance and stood out from the other inmates/detainees being transported due to her paleness, weakness, slow movement, and apparent

inability to speak for herself.

61.     The Rio Arriba County Defendants were aware that individuals booked into their custody often suffer from severe medical problems, including alcohol withdrawal and liver disease, and that without appropriate medical treatment from qualified facilities and personnel, such conditions can turn fatal.

62.     Ms. Gambler was booked into the RACADF and placed in a detoxification cell during the night of Friday, April 24, 2015, or the early morning hours of Saturday, April 25, 2015. Upon information and belief, Defendant Jordan was supervising the booking area where Ms. Gambler was incarcerated at this time.

63.     The RACADF does not have a permanent medical unit or in-house medical staff. Accordingly, in September 2014, Rio Arriba entered into an Agreement for Inmate Health Care Services at Rio Arriba County, New Mexico, (hereinafter referred to as "Rio Arriba Agreement") with Defendant Southwest Correctional Medical Group, Inc., to "administer health care services and related administrative services at the [RACADF]." A copy of the Rio Arriba Agreement, in which Rio Arriba County and Southwest Medical agreed to "jointly operate common healthcare services at the [RACADF]", is attached to this Complaint as Exhibit A and incorporated herein. Through the Rio Arriba Agreement, Rio Arriba County designated certain medical responsibilities of the County concerning persons in County custody to Southwest Medical under the supervision of Rio Arriba County.

64.     Pursuant to the Rio Arriba Agreement, an initial determination as to Ms. Gambler's fitness for confinement was to be made by Southwest Medical.

65.     Pursuant to the Rio Arriba Agreement, licensed practical nurses were required to be staffed by Southwest Medical at the RACADF for 8 hours during the day shift seven days a

14

week and 8 hours during the evening shift seven days a week.

66.     Pursuant to the Rio Arriba Agreement, on-call medical personnel were to be available, through Southwest Medical, to the RACADF "24 hours per day and 7 days per week."

67.     Pursuant to the Rio Arriba Agreement, Rio Arriba County screened all proposed staff, employees, agents and/or subcontractors of Southwest Medical that were to provide services at the RACADF. As such, Rio Arriba County had authority over Southwest Medical personnel sent to RACADF pursuant to the Rio Arriba Agreement.

68.     Pursuant to the Rio Arriba Agreement, staff of the RACADF were to be provided ongoing education and training in regards to health and mental health. This education and training was to be provided by Southwest Medical.

69.     Pursuant to the Rio Arriba Agreement, Defendant Southwest Medical was to provide necessary medical care to arrested persons with medical issues pre-dating their confinement "until the arrested person can be transported to a medical care facility by the arresting agency or their designee."

70.     Pursuant to the Rio Arriba Agreement, Defendant Southwest Medical was to identify to Rio Arriba County all incarcerated persons that may require extensive medical care while incarcerated.

71.     Before and after being booked into the RACADF, Ms. Gambler's condition continued to deteriorate as her liver was struggling to function appropriately.

72.     On April 25, 2015, Ms. Gambler was brought to John/Jane Doe 1 for "sick call" at the RACADF and returned to a detoxification cell shortly thereafter without appropriate medical treatment for her serious medical condition.

73.     By April 26, 2015, Ms. Gambler's condition was so deteriorated that she was

15

unable to utilize her allotted hour of recreation and so informed Defendant Sanchez and John/Jane Doe 2.

74.     On April 26, 2015, John/Jane Doe 2 conducted a "shakedown" of the booking area where Ms. Gambler was incarcerated in a detoxification cell under the supervision of Defendants Manzanares and J. Martinez. At this time, it was obvious to lay observers that Ms. Gambler was in dire need of medical attention.

75.     As of Monday, April 27, 2015, Ms. Gambler had been incarcerated in Case No. M-43-MR-2014-02127 for a period of eight days in regards to $86 in unpaid fines and fees associated with a citation for failure to wear a seat belt – an unarrestable offense.

76.     As of Monday, April 27, 2015, Ms. Gambler had been incarcerated in Case No. M-43-MR-2014-00120 for a period of eight days in regard to a $500 bench warrant.

77.     On April 27, 2015, while Ms. Gambler was incarcerated at the RACADF, the Rio Arriba County Magistrate Court entered a Release Order and Bond stating "IT IS ORDERED that the defendant be released from custody" under conditions of release as to Case No. M-43-MR-2014-00120.

78.     In addition, upon information and belief, on April 27, 2015, the Rio Arriba County Magistrate Court entered an order referencing both Case No. M-43-TR-201402127 and Case No. M-43-MR-2014-00120 indicating Ms. Gambler was subject to "Release – credit to time served."

79.     On April 27, 2015, when Ms. Gambler was ordered released, upon information and belief, Defendant Mercure was supervising the booking area where Ms. Gambler was incarcerated and Defendant C. Martinez was acting as a correctional officer responsible for inmates within the booking area.

80.     On Tuesday, April 28, 2015, RACADF agents arranged for at least one other inmate

to be transported to a hospital in Espanola. Although Ms. Gambler was in obvious medical distress, she was not afforded appropriate medical treatment or transported to hospital facilities.

81.     On April 28, 2015, Defendant DeAguero was acting as supervisor of the booking area where Ms. Gambler was incarcerated and Defendant Howie was acting as a correctional officer responsible for inmates in the same.

82.     On April 29, 2015, after Ms. Gambler was ordered released and while she was in obvious medical distress, Defendant Jordan acted as supervisor over the booking area where Ms. Gambler was incarcerated within the RACADF, and John/Jane Doe 2 acted as the correctional officer responsible for inmates therein.

83.     On April 30, 2015, after Ms. Gambler was ordered released and while she was in obvious medical distress, Defendants Deaguero and J. Martinez acted as supervisors over the booking area where Ms. Gambler was incarcerated within the RACADF, and Defendants Howie and John/Jane Doe 2 acted as the correctional officers responsible for inmates therein.

84.     On April 30, 2015, John/Jane Doe 1 was present in the facility but did not provide any medical attention or care to Ms. Gambler.

85.     On May 1, 2015, after Ms. Gambler was ordered released and while she was in obvious medical distress, Defendants J. Martinez and Mercure acted as supervisors over the booking area where Ms. Gambler was incarcerated within the RACADF, and Defendants C. Martinez, Gallegos, and John/Jane Doe 2 acted as the correctional officers responsible for inmates therein.

86.     Since the time of her booking, including the several days since she was ordered released, appropriate medical assistance was not made available to Ms. Gambler by the Rio Arriba County Defendants despite correctional employees, including Defendants C. Martinez, Gallegos,

Sanchez, Howie, and John/Jane Doe 2, who were acting as correctional officers responsible for inmates within the booking area where Ms. Gambler was incarcerated at RACADF, being repeatedly informed that Ms. Gambler was very ill and the fact that it was apparent to laymen that Ms. Gambler required immediate medical attention.

87.     At approximately 9:30 p.m. on May 2, 2015, John/Jane Doe 1 was notified by John/Jane Doe 2 that Ms. Gambler was in need of medical attention. John/Jane Doe 1 refused to see Ms. Gambler or otherwise provide medical care to her on May 2, 2015, despite being aware Ms. Gambler had serious medical concerns including hepatitis C and alcohol withdrawal delirium.

88.     The Rio Arriba County Defendants did not seek appropriate medical attention for Ms. Gambler until May 2, 2015, even though the need for medical attention was obvious throughout Ms. Gambler's incarceration.

89.     As of May 2, 2015, Ms. Gambler had been incarcerated at the RACADF by the Rio Arriba County Defendants for five (5) days past the date in which the Magistrate Court had ordered her release. During those intervening five (5) days, the Rio Arriba County Defendants showed deliberate indifference to Ms. Gambler's serious medical needs, including hepatitis C and alcohol withdrawal delirium, and did not provide any medical care to Ms. Gambler.

90.     On May 3, 2015, Ms. Gambler was found unresponsive at the RACADF. She was eventually airlifted to Christus St. Vincent Hospital in Santa Fe, New Mexico. There, Ms. Gambler was diagnosed with a gastrointestinal bleed with hypovolemic shock and severe lactic acidosis.

91.     By the time the Defendants provided Ms. Gambler necessary medical care, her condition was fatal. She died May 3, 2015.

92.     By the time of her death, Ms. Gambler's condition had deteriorated so far that approximately one-quarter to one-third of her blood had drained into her abdominal cavity.

18

93.     Ms. Gambler experienced substantial and debilitating discomfort, confusion and pain for several days while she was confined in the custody of Defendants and during which time she was not provided appropriate adequate medical treatment despite her request for treatment and obvious need for the same.

94.     At no time between her arrest on April 19, 2015, and her death on May 3, 2015, did Defendants bring Ms. Gambler before the Court in relation to the $86 in unpaid fines and fees associated with a citation for failure to wear a seat belt in Case No. M-43-TR-2014-02127 in accordance with NMSA 1978, §31-12-3 or other law or in relation to the bench warrant issued in Case No. M-43-MR-2014-00120. At least six (6) working days passed without the Defendants bringing Ms. Gambler before the Court.

95.     Defendants were aware no determination as to whether or not Ms. Gambler's failure to pay the $86 in unpaid fines and fees in Case No. M-43-MR-2014-02127 was contumacious was made before her arrest or after her arrest on April 19, 2015, as was necessary for her detention to be continued lawfully.

96.     Defendants knew, or should have known, Ms. Gambler had serious medical needs before May 2, 2015.

97.     Defendants knew, or should have known, Ms. Gambler had serious medical needs on May 2, 2015.

98.     Defendants knew, or should have known, that SFCADF and RACADF were unsuited to provide appropriate medical care for Ms. Gambler's serious medical needs during her incarceration at said facilities.

99.     Defendants knew, or should have known, Ms. Gambler was unlikely to receive appropriate medical care for her serious medical needs at the RACADF, particularly when she was

booked on weekend hours.

100.  Defendants acted with deliberate indifference to Ms. Gambler's serious medical needs and failed to provide her with appropriate life-saving treatment or transport her to a hospital or other medical facility in a timely manner for appropriate treatment.

101.  Upon information and belief, with more timely receipt of appropriate medical treatment, Ms. Gambler's condition would not have become fatal.

102.  Because of the failure to properly examine, diagnose and treat Ms. Gambler's condition, Ms. Gambler was denied the opportunity to receive timely life-saving medical treatment.

103.  In addition, Defendants' failure to transport Ms. Gambler to an appropriate medical facility on May 2, 2015, denied Ms. Gambler the opportunity to receive timely life-saving medical treatment.

104.  Upon information and belief, the Rio Arriba County Defendants had a policy or custom of not timely responding to medical concerns of incarcerated persons and routinely dismissing serious medical needs of inmates without sufficient testing or examination, causing serious injuries and death.

105.  Defendants are obliged by N.M. Const. art. II, §13 and N.M. Const. art. II, §18 to provide adequate and appropriate medical care to convicted inmates and pretrial detainees within their custody and care.

106.  Defendants are obliged by U.S. Const. amend. VIII and U.S. Const. amend. XIV to provide adequate medical care to convicted inmates and pretrial detainees within their custody and care.

107.  The medical care actually provided by Defendants to Ms. Gambler while she was

within their custody and care was deficient, if existent at all.

108.   The medical care actually provided by Defendants to Ms. Gambler was beneath constitutional standards and exhibited a deliberate indifference to Ms. Gambler's known serious medical condition.

**COUNT ONE**
**(Claims against the Santa Fe Defendants**
**Arising Under the New Mexico Tort Claims Act)**

109.   Plaintiff incorporates all the preceding paragraphs as if fully set forth herein.

110.   At all times material hereto, Defendant Santa Fe County operated the SFCADF, by and through Defendant Caldwell, who served as Warden of SFCADF.

111.   At all times material hereto, Defendants Caldwell, John/Jane Doe 3 and John/Jane Doe 4 were acting within the scope of their employment as Warden, correctional officers and correctional medical personnel respectively. All acts and omissions of said Defendants were done in their official capacity as agents and employees of Defendant Santa Fe County, and Santa Fe County is liable for the same.

112.   Defendant Santa Fe County is responsible for the acts of Santa Fe County correctional officers, detention officers, and other law enforcement personnel, including but not limited to John/Jane Doe 3, and is liable for the acts of said persons employed by Santa Fe County and/or at the SFCADF.

113.   All medical providers and personnel at the SFCADF, including but not limited to John/Jane Doe 4, acted at all times material hereto as agents and/or employees of Defendant Santa Fe County, and said Defendant is responsible for the acts of all medical professional contractors/employees who provide medical services at the SFCADF.

114.   Defendants Santa Fe County and Caldwell had a duty to exercise reasonable care

21

in the maintenance, supervision, and operation of the premises of their facilities, including SFCADF.

115.    Defendants Santa Fe County and Caldwell had a duty to exercise reasonable care in the hiring, training and supervising of their employees, contractors, representatives and agents to ensure the same did not act negligently in the operation and/or maintenance of the SFCADF.

116.    Defendants Santa Fe County and Caldwell's duty to exercise reasonable care included ensuring inmates within their custody and control received adequate medical care and treatment and that all jurisdictions receiving transfer of inmates within their custody and control are aware of said inmates' medical needs.

117.    Defendants Santa Fe County and Caldwell's duty to exercise reasonable care in hiring, training and supervising their employees, contractors, representatives and agent included the obligation to adopt and inculcate reasonable and proper operational policies and procedures concerning the safe operation of the SFCADF, including procedures for providing appropriate medical care to in-custody persons and persons subject to transfer to the custody of other jurisdictions.

118.    Defendants Santa Fe County and Caldwell failed to exercise reasonable care in the operation and maintenance of the SFCADF because they failed to adopt and implement reasonable, common-sense procedures to ensure inmates received adequate and appropriate medical care for serious medical conditions such as hepatitis C and alcohol withdrawal delirium, to ensure that all receiving jurisdictions were fully aware of all serious medical conditions of any inmate subject to transfer from the same, and to ensure that inmates/detainees with serious medical needs were not transferred to facilities unable or unwilling to provide appropriate medical care for serious medical needs such as hepatitis C and alcohol withdrawal delirium.

22

119.    Defendants Santa Fe County, Caldwell, John/Jane Doe 3 and John/Jane Doe 4 ("Santa Fe County Defendants") failed to use ordinary care as it relates to providing Plaintiff with appropriate medical diagnosis, treatment and care for a serious medical condition while in their custody at the SFCADF.

120.    Defendants Santa Fe County and Caldwell breached their duties of care to Plaintiff by failing to adopt and inculcate reasonable and proper operational policies and procedures concerning the safe operation of the SFCADF; failing to properly supervise employees and agents of the SFCADF, including John/Jane Doe 3 and John/Jane Doe 4, who themselves failed to prevent harm and injuries to inmate Plaintiff; and by otherwise failing to take appropriate and reasonable action to prevent the injury, illness, and eventual death suffered by Plaintiff.

121.    Defendants Santa Fe County and Caldwell are authorized policymakers responsible for creating, and adhering to, policies, procedures, and customs for the SFCADF and for the screening, hiring training, retention, supervision, discipline, counseling, and control of Santa Fe County Detention Center officers and personnel.

122.    The Santa Fe County Defendants were aware persons taken into custody by law enforcement and subject to custody and/or transfer of custody often have significant health risks, including liver problems and withdrawal symptoms that may become fatal without proper treatment. Despite this awareness, said Defendants failed to properly train and supervise their employees to implement and maintain proper procedures to stop preventable harm to individuals arrested and suffering from significant health problems that, without proper treatment, posed significant risks, including potential death. Said Defendants further failed to stop preventable harm to Ms. Gambler, who was suffering from significant health problems known to said Defendants that, without proper treatment, posed significant risks, including potential death.

123.    The Santa Fe County Defendants were aware persons taken into custody by law enforcement and subject to custody and/or transfer of custody often have significant health risks and it is vital to said persons' health that any jurisdiction taking custody of said person obtain all appropriate medical information regarding the health risks. Despite this awareness, said Defendants failed to properly train and supervise their employees to implement and maintain proper procedures to stop preventable harm to individuals arrested, and transferred, who suffer from significant health problems that, without proper treatment, posed significant risks, including potential death. Said Defendants further failed to stop preventable harm to Ms. Gambler, who was suffering from significant health problems known to said Defendants that, without proper treatment, posed significant risks, including potential death.

124.    The Santa Fe County Defendants breached their duties and failed to ensure Plaintiff received adequate medical treatment, to provide treatment for an obvious significant medical need, to ensure that all jurisdictions receiving custody of Plaintiff from Defendants were aware of Plaintiff's significant medical risks and need for treatment, and to prevent transfer of Plaintiff to a facility at which they were aware, or should have been aware, Plaintiff would be harmed because she was unlikely to receive appropriate and necessary medical care. As a result, while in the custody of both the Santa Fe Defendants and the RACADF, Plaintiff did not receive appropriate and accessible medical care for her condition and suffered severe pain and suffering, loss of chance of life, and death.

125.    During Ms. Gambler's incarceration at the SFCADF, the Santa Fe Defendants knew or should have known that Ms. Gambler's medical condition was sufficiently serious to require prompt medical treatment, including, but not limited to documented signs of Ms. Gambler's continually deteriorating condition.

126.    Said Defendants disregarded the substantial risk of harm to Ms. Gambler's health and life and did so recklessly and/or with deliberate indifference.

127.    Defendants Santa Fe County and Caldwell failed to exercise reasonable care in the operation and maintenance of the SFCADF because they failed to adopt and implement reasonable, common-sense procedures to ensure inmates received adequate and appropriate medical care.

128.    The conduct of the Santa Fe County Defendants was a direct and proximate cause of the injuries, and ultimate death, suffered by Plaintiff and the resulting damages described herein.

**COUNT TWO**
**(Claims Against Rio Arriba County Defendants**
**Arising Under the New Mexico Tort Claims Act)**

129.    Plaintiff incorporates all the preceding paragraphs as if fully set forth herein.

130.    At all times material hereto, Defendant Rio Arriba County operated the RACADF, by and through Defendant DeYapp, who served as Detention Administrator of RACADF, and Defendants Jordan, Manzanares, J. Martinez, and Mercure, who served as correctional supervisors at the RACADF, and Defendants C. Martinez, Sanchez, Howie, Gallegos and John/Jane Doe 2, who served as correctional officers at the RACADF.

131.    At all times material hereto, Defendant DeYapp was acting within the scope of his employment as Detention Administrator for Defendant Rio Arriba County and Defendants Jordan, Manzanares, J. Martinez, Mercure, C. Martinez, Sanchez, Howie, Gallegos, and John/Jane Doe 2 were acting within the scope of his/her employment as correctional staff for Defendant Rio Arriba County.

132.    All acts and omissions of Defendants DeYapp Jordan, Manzanares, J. Martinez, Mercure, C. Martinez, Sanchez, Howie, Gallegos, and John/Jane Doe 2 were done in their official capacity as agents and employees of Defendant Rio Arriba County, and Rio Arriba County is liable

for the same.

133.   Defendant Rio Arriba County is responsible for the acts of Rio Arriba County correctional officers, detention officers, and other law enforcement personnel, including the other Rio Arriba County Defendants, and is liable for the acts of said persons employed by Rio Arriba County and/or at the RACADF.

134.   At all times material hereto, all Southwest Medical employees and/or contractors acted as employees or agents of Rio Arriba County and were authorized by Rio Arriba County to provide medical services to inmates and detainees at the RACADF and acted within the scope of their employment.

135.   Southwest Medical employee John/Jane Doe 1 is a "public employee" as defined by NMSA 1978, §41-4-3(F).

136.   Defendants Rio Arriba County and DeYapp are each responsible for the acts of the medical professional contractors/employees of Southwest Medical who provided medical services at the RACADF at all times material hereto, and are therefore jointly liable for the acts and omissions of the medical providers that provided, or should have provided, medical care to Ms. Gambler.

137.   Defendants Rio Arriba Count and DeYapp had a duty to exercise reasonable care in the maintenance, supervision, and operation of the premises of their facilities, including RACADF.

138.   Defendants Rio Arriba County and DeYapp had a duty to exercise reasonable care in the hiring, training and supervising of their employees, contractors, representatives and agents to ensure the same did not act negligently in the operation and/or maintenance of the RACADF.

139.   Defendants Rio Arriba County and DeYapp had a duty to exercise reasonable care

included ensuring inmates within their custody and control received adequate medical care and treatment.

140.    Defendants Rio Arriba County and DeYapp's duty to exercise reasonable care in hiring, training and supervising their employees, contractors, representatives and agent included the obligation to adopt and inculcate reasonable and proper operational policies and procedures concerning the safe operation of the RACADF, including procedures for providing appropriate medical care to in-custody persons.

141.    As the contractor providing primary medical services for inmates and detainees at the RACADF, Southwest Medical has a duty to provide adequate and proper medical care to inmates and detainees in custody at the RACADF or otherwise ensure said inmates and detainees were referred and transferred to needed specialists or facilities, including a duty to determine the fitness of any inmate or detainee for confinement upon booking.

142.    At the time she was taken into custody by the Rio Arriba County Defendants from the SFCADF, Ms. Gambler's medical condition was sufficiently serious such that a layman could have recognized the need for prompt medical treatment. Other inmates transferred from SFCADF to RACADF did recognize Ms. Gambler's obvious need for prompt medical treatment.

143.    At the time, the Rio Arriba County Defendants, Southwest Medical and John/Jane 1 knew or should have known that Ms. Gambler's medical condition was sufficiently serious to require prompt medical treatment.

144.    Said Defendants disregarded the substantial risk of harm to Ms. Gambler's health and life and did so recklessly and/or with deliberate indifference.

145.    Defendants Rio Arriba County and DeYapp failed to exercise reasonable care in the operation and maintenance of the RACADF because they failed to adopt and implement

27

reasonable, common-sense procedures to ensure inmates received adequate and appropriate medical care.

146.    The Rio Arriba County Defendants failed to use ordinary care as it relates to providing Ms. Gambler with appropriate medical diagnosis, treatment and care for a serious medical condition while in their custody at the RACADF.

147.    Defendants Rio Arriba County and DeYapp breached their duties of care to Ms. Gambler by failing to adopt and inculcate reasonable and proper operational policies and procedures concerning the safe operation of the RACADF; failing to properly supervise employees, agents and contractors of the RACADF, including, but not limited to the other Rio Arriba County Defendants, Southwest Medical and John/Jane Doe 1, who themselves failed to prevent harm and injuries to inmate Ms. Gambler; and by otherwise failing to take appropriate and reasonable action to prevent the injury, illness, and eventual death suffered by Ms. Gambler.

148.    The Rio Arriba County Defendants intentionally and/or recklessly delayed appropriate and accessible medical care for Ms. Gambler's readily apparent serious medical condition.

149.    The policies and customs adopted by Defendants Rio Arriba County and DeYapp failed to ensure proper and adequate medical treatment and care was provided to inmates and detainees at RACADF and caused Ms. Gambler's injuries and ultimate death.

150.    As a result of the acts and omissions of Defendants Rio Arriba County and DeYapp, Ms. Gambler did not receive appropriate and accessible medical care for her condition and suffered severe pain and suffering, loss of chance of life, and death.

151.    Defendants Rio Arriba County and DeYapp, by their acts or omissions, unlawfully imprisoned Plaintiff after April 27, 2015, in violation of the United States Constitution, the New

Mexico Constitution, statutory and common law.

152.    The conduct of Defendants Rio Arriba County and DeYapp was a direct and proximate cause of the injuries, and ultimate death, suffered by Ms. Gambler and the resulting damages described herein.

## COUNT THREE
### (Claims Against Defendant Southwest Medical and John/Jane Doe 1 for Negligence Causing Wrongful Death)

153.    Plaintiff incorporates all the preceding paragraphs as if fully set forth herein.

154.    At all times material hereto, Ms. Gambler was under the medical responsibility, care, and treatment of Defendants Southwest Medical and John/Jane Doe 1.

155.    Defendant Southwest Medical, and its employees, contractors and agents, including Defendant John/Jane Doe 1, had a duty to exercise reasonable care to protect the health and safety of persons under their medical responsibility, care, and treatment, including Ms. Gambler, and, in particular, to take reasonable steps to provide adequate medical care to the same.

156.    Defendant Southwest Medical, and its employees, contractors and agents, including Defendant John/Jane Doe 1, had a duty to exercise reasonable care in carrying out their duties and providing medical care at RACADF in such a way that inmate safety and medical care was not unreasonably compromised.

157.    Defendants Southwest Medical and their employees, agents and contractors, including John/Jane Doe 1, had a duty to exercise the degree of care, skill, and learning expected of a reasonably qualified healthcare provider in the same or similar circumstances.

158.    Defendants Southwest Medical and John/Jane Doe 1 breached the standard of care by failing to assess, monitor, treat and provide appropriate medical care for Ms. Gambler, despite her obvious signs of medical distress.

29

159.     Defendants Southwest Medical and John/Jane Doe 1 breached the standard of care by failing to conduct appropriate tests to determine the cause of Ms. Gambler's symptoms.

160.     Defendants Southwest Medical and John/Jane Doe 1 breached the standard of care by failing to properly diagnose Ms. Gambler's serious medical condition.

161.     Defendants Southwest Medical and John/Jane Doe 1 breached the standard of care by failing to properly treat Ms. Gambler's serious medical condition.

162.     As a direct and proximate result of the actions and/or omissions of Defendants Southwest Medical and John/Jane Doe 1, Ms. Gambler suffered pain and suffering, loss at a chance at life, and death.

### COUNT FOUR
### (Claims Against the Santa Fe Defendants for
### Violations of Due Process and Cruel and Unusual Punishment)

163.     Plaintiff incorporates all the preceding paragraphs as if fully set forth herein.

164.     There are well-established rights prohibiting the cruel and unusual treatment of prisoners as set forth by U.S. Const. amend. VIII and N.M. Const. art. II, §13.

165.     Prohibited cruel and unusual punishment includes a deliberate indifference to the serious medical needs of prisoners. *Estelle v. Gamble*, 429 U.S. 97 (1976).

166.     There are well-established substantive due process rights set forth by U.S. Const. amend. XIV and N.M. Const. art. II, §18, prohibiting improper punishment of pre-trial detainees prior to adjudication of guilt. *Bell v. Wolfish*, 441 U.S. 520 (1979).

167.     Due process requires the State to provide for a pre-trial detainee's basic human needs, including medical care. *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189 (1989). The standards for determining violations of due process as to pre-trial detainees in this context are, at a minimum, coextensive with those standards prohibiting cruel and unusual

30

punishment of convicted prisoners under U.S. Const. amend. VIII and N.M. Const. art. II, §13. *City of Revere v. Massachusetts General Hosp.*, 463 U.S. 239 (1983).

168.    Defendants Santa Fe County, Rio Arriba County, Caldwell and DeYapp were aware the medical treatment facilities at RACADF were insufficient to meet the needs of an individual with serious medical needs.

169.    Defendants Santa Fe County, Rio Arriba County, Caldwell and DeYapp were aware the medical care available to inmates and detainees at RACADF were insufficient to meet the needs of an individual with serious medical needs.

170.    It was common knowledge that the RACADF had inadequate medical facilities and inadequate medical care for inmates and detainees with serious medical conditions.

171.    Defendants Santa Fe County, Rio Arriba County, Caldwell and DeYapp were aware persons transferred to the custody of RACADF did not have immediate access to appropriate medical care, particularly those individuals with serious medical needs taken into custody at the RACADF outside of normal weekday business hours.

172.    Upon information and belief, while in custody at the SFCADF, Ms. Gambler was housed in the medical unit due to her apparent medical needs.

173.    While in custody at the SFCADF, Ms. Gambler was subject to observation in fifteen minute intervals due to her medical condition, and over the course of her time in custody at the facility, Ms. Gambler's conditions deteriorated significantly such that it was outwardly apparent to lay persons that she was in dire need of further medical attention.

174.    Despite Ms. Gambler's deteriorating condition, the Santa Fe County Defendants took no action to provide her with necessary medical care for a known serious medical condition.

175.    The actions of the Santa Fe County Defendants demonstrate a policy or custom that

fails to ensure inmates and detainees with known chronic diseases that may lead to serious medical complications and death if not properly and timely treated receive appropriate medical care.

176.    The failure of the Santa Fe County Defendants to ensure that inmates and detainees with known chronic diseases that may lead to serious complications and death if not properly and timely treated receive appropriate medical care set into motion a series of events that Defendants knew or should have known would cause inmates and detainees such as Ms. Gambler to be deprived of her constitutional rights.

177.    The above failures of the Santa Fe Defendants demonstrate a deliberate indifference to the serious medical needs of inmates and detainees within their custody.

178.    The policies and customs of the Santa Fe Defendants caused Ms. Gambler's constitutional injuries, including cruel and unusual punishment and violation of due process, and ultimately, her death.

179.    Due directly to the Santa Fe Defendants' failures, Ms. Gambler was deprived of adequate and appropriate medical treatment during her incarceration and detention at SFCADF.

180.    Due directly to the Santa Fe Defendants' failures, Ms. Gambler suffered an unnecessary and wanton infliction of pain.

181.    Due directly to the Santa Fe Defendants' failures, Ms. Gambler suffered damages and death.

182.    Despite being aware of the lack of appropriate medical treatment facilities and timely care for persons with serious medical needs, the Santa Fe County Defendants transferred Ms. Gambler, an inmate and detainee with serious medical needs, to the custody of RACADF on at approximately 6:30 p.m. on Friday, April 24, 2015, thereby virtually ensuring she would not receive medical attention until Monday, April 27, 2015, at the earliest, and likely would never

receive appropriate medical attention for her condition.

183.    The actions of the Santa Fe County Defendants demonstrate a policy or custom that fails to ensure inmates and detainees in need of medical care are not transferred to facilities that lack the capacity, ability or willingness to provide appropriate medical care to persons with serious medical needs.

184.    The failure of the Santa Fe County Defendants to ensure that inmates and detainees with serious medical needs were not transferred to facilities unable or unwilling to provide appropriate care to them set into motion a series of events that Defendants knew or should have known would cause inmates and detainees such as Ms. Gambler to be deprived of her constitutional rights.

185.    The failure of the Santa Fe Defendants to ensure inmates and detainees with serious medical needs were not transferred to facilities unable or unwilling to provide appropriate care to them demonstrates a deliberate indifference to the serious medical needs of inmates and detainees within their custody.

186.    The policies and customs of the Santa Fe Defendants caused Ms. Gambler' constitutional injuries, including cruel and unusual punishment and violation of due process, and ultimately, her death.

187.    Due directly to the Santa Fe Defendants' failure to ensure inmates and detainees with serious medical needs were not transferred to facilities unable or unwilling to provide appropriate care to them, Ms. Gambler was deprived of adequate and appropriate medical treatment during her incarceration and detention.

188.    Due directly to the Santa Fe Defendants' failure to ensure inmates and detainees with serious medical needs were not transferred to facilities unable or unwilling to provide

33

appropriate care to them, Ms. Gambler was suffered an unnecessary and wanton infliction of pain.

189.     Due directly to the Santa Fe Defendants' failure to ensure inmates and detainees with serious medical needs were not transferred to facilities unable or unwilling to provide appropriate care to them, Ms. Gambler suffered damages and death.

190.     An award of damages against the Santa Fe County Defendants is appropriate for violations of Ms. Gambler's rights under U.S. Const. amend. VIII, U.S. Const. amend. XIV, N.M. Const. art II, §13, and N.M. Const. art. II, §18.

## COUNT FIVE
### (Claims Against the Rio Arriba County Defendants for
### Deprivation of Civil Rights in Violation of §1983)

191.     Plaintiff incorporates all the preceding paragraphs as if fully set forth herein.

192.     Ms. Gambler had a right to be free from unreasonable seizures pursuant to U.S. Const. amend. IV.

193.     Ms. Gambler had a right to be free from the deprivation of her liberty without due process, which includes the right to be free from continued detention after it was known, or should have been known, that Ms. Gambler was entitled to release.

194.     There are well-established rights prohibiting the cruel and unusual treatment of prisoners as set forth by U.S. Const. amend. VIII and N.M. Const. art. II, §13.

195.     Prohibited cruel and unusual punishment includes a deliberate indifference to the serious medical needs of prisoners. *Estelle v. Gamble*, 429 U.S. 97 (1976).

196.     There are well-established substantive due process rights set forth by U.S. Const. amend. XIV and N.M. Const. art. II, §18, prohibiting improper punishment of pre-trial detainees prior to adjudication of guilt. *Bell v. Wolfish*, 441 U.S. 520 (1979).

197.     Due process requires the State to provide for a pre-trial detainee's basic human

needs, including medical care. *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189 (1989). The standards for determining violations of due process as to pre-trial detainees in this context are, at a minimum, coextensive with those standards prohibiting cruel and unusual punishment of convicted prisoners under U.S. Const. amend. VIII and N.M. Const. art. II, §13. *City of Revere v. Massachusetts General Hosp.*, 463 U.S. 239 (1983).

198.    As a provider of medical services for inmates and detainees in custody at the RACADF, Defendants Southwest Medical and John/Jane Doe 1 were operating as state actors under the color of law.

199.    Ms. Gambler's serious and apparent medical condition demonstrated the obvious need for additional and continuing medical treatment, or the need to refer to a medical specialist or to an appropriately-equipped medical facility.

200.    Defendants were aware the medical treatment facilities at RACADF were insufficient to meet the needs of an individual with serious medical needs such as Ms. Gambler.

201.    Defendants were aware the medical care available to inmates and detainees at RACADF were insufficient to meet the needs of an individual with serious medical needs such as Ms. Gambler.

202.    Defendants aware persons received into the custody of RACADF did not have immediate access to appropriate medical care, particularly those individuals with serious medical needs taken into custody at the RACADF outside of normal weekday business hours.

203.    Defendant Rio Arriba County requested transfer of Ms. Gambler from the custody of the SFCADF to the custody of the Rio Arriba County Defendants at RACADF on Friday, April 24, 2015.

204.    The Rio Arriba County Defendants effected Ms. Gambler's release from the

medical unit of SFCADF, where she was receiving medical care, to the RACADF at approximately 6:30 p.m. on Friday, April 24, 2015, thereby virtually ensuring she would not receive further necessary medical care until at least Monday, April 27, 2015.

205.    Despite the obvious need for medical attention and care, the Rio Arriba County Defendants denied Ms. Gambler care during her detention at the RACADF.

206.    The Rio Arriba County Defendants failed to provide for an appropriate and sufficiently thorough initial medical evaluation to ensure inmates and detainees, such as Ms. Gambler, would not be subjected to detention at RACADF if they required medical attention and care that the facility was not equipped to provide.

207.    The actions or omissions of the Rio Arriba County Defendants demonstrate a policy or custom that fails to ensure inmates and detainees with serious medical needs receive appropriate and necessary medical care in a timely manner.

208.    The failure of the Rio Arriba County Defendants to ensure that inmates and detainees with serious medical needs receive appropriate and necessary medical care in a timely manner resulted in a custodial situation wherein Defendants knew or should have known inmates and detainees such as Ms. Gambler would be deprived of her constitutional rights.

209.    The failure of the Rio Arriba County Defendants to ensure inmates and detainees with serious medical needs received appropriate and necessary medical care in a timely manner demonstrates a deliberate indifference to the serious medical needs of inmates and detainees within their custody.

210.    The policies and customs of the Rio Arriba County Defendants caused Ms. Gambler' constitutional injuries, including cruel and unusual punishment and violation of due process, and ultimately, her death.

211.    Due directly to the Rio Arriba County Defendants' failure to ensure inmates and detainees with serious medical needs received appropriate and necessary medical care in a timely manner, Ms. Gambler was deprived of adequate and appropriate medical treatment during her incarceration and detention.

212.    Due directly to the Rio Arriba County Defendants' failure to ensure inmates and detainees with serious medical needs received appropriate and necessary medical care in a timely manner, Ms. Gambler was suffered an unnecessary and wanton infliction of pain.

213.    Due directly to the Rio Arriba County Defendants' failure to ensure inmates and detainees with serious medical needs received appropriate and necessary medical care in a timely manner, Ms. Gambler suffered damages and death.

214.    On April 27, 2015, the Rio Arriba County Defendants had information available to them and notice that they no longer had authority to continue Ms. Gambler's detention at the RACADF. Said Defendants intentionally, willfully, maliciously and recklessly caused Ms. Gambler's continued detention without lawful authority for the same.

215.    The Rio Arriba County Defendants' recklessness and deliberate indifference caused Ms. Gambler to suffer unjust and unlawful incarceration until her death on May 3, 2015.

216.    An award of damages against the Rio Arriba County Defendants is appropriate for violations of Ms. Gambler's rights under U.S. Const. amend. IV, U.S. Cons. amend. VIII, U.S. Const. amend. XIV, N.M. Const. art II, §13, and N.M. Const. art. II, §18.

## COUNT SIX
### (Supervisory Liability Claims Against Defendants Santa Fe County, Rio Arriba County, Caldwell, DeYapp, Manzanares, J. Martinez, Mercure, Jordan and Deaguero)

217.    Plaintiff incorporates all the preceding paragraphs as if fully set forth herein.

218.    Defendants Santa Fe County and Caldwell are authorized policymakers responsible

for creating, and adhering to, policies, procedures, and customs of the SFCADF and for the screening, hiring, training, retention, supervision, discipline, counseling, and control of SFCADF officers and personnel.

219.    Defendants Santa Fe County and Caldwell are authorized policymakers responsible for creating, and adhering to, policies, procedures, and customs of the SFCADF and for the screening, hiring, training, retention, supervision, discipline, counseling, and control of SFCADF officers, personnel and contractors.

220.    Defendants Santa Fe County and Caldwell were aware that persons subjected to incarceration or detention can have serious medical needs that require immediate diagnosis and access to appropriate medical care. Despite this awareness, said Defendants failed to properly train and supervise their employees and agents to implement and maintain proper procedures to stop preventable harm to individuals subjected to incarceration or detention with serious medical needs such as requiring immediate full medical screening and diagnosis, and providing access to appropriate and necessary medical care, including referrals and transport for persons subject to custody that required medical attention and care from specialists unavailable to inmates and detainees at the SFCADF.

221.    Defendants Santa Fe County and Caldwell maintained an official policy, custom or practice of incarcerating or detaining individuals at the SFCADF without providing appropriate, necessary and timely medical care for serious medical needs of inmates and detainees at the SFCADF.

222.    As a result of the aforementioned policy, practice or custom, Defendants Santa Fe County and Caldwell, their agents, representatives or employees, including John/Jane Doe 3 and John/Jane Doe 4, held Ms. Gambler in custody without providing appropriate, necessary and

timely medical diagnosis and care for her serious medical needs, thereby causing Ms. Gambler to suffer cruel and unusual punishment and violation of her right to due process, ultimately resulting in her death.

223. The risk that inmates and detainees with serious medical needs will be endangered when inadequate steps are taken to ensure timely access to necessary medical diagnosis, treatment and care is a grave risk, and the need for proper training and procedures to guard against the same is obvious. Despite this risk, Defendants Santa Fe County and Caldwell did not arrange for proper training and procedures, thereby displaying an official custom, policy or practice which was deliberately indifferent to the rights of Ms. Gambler and other inmates and detainees held in custody at SFCADF.

224. Defendants Santa Fe County and Caldwell knew or should have known that persons transferred to the custody of RACADF were unlikely to receive appropriate and necessary medical care for inmates and detainees with serious medical needs. Despite this awareness, said Defendants failed to properly train and supervise their employees and agents to implement and maintain proper procedures to stop preventable harm to individuals held in the custody of the SFCADF such as requiring said individuals not be released to facilities unable or unwilling to provide appropriate and necessary medical care for serious medical needs.

225. Defendants Santa Fe County and Caldwell maintained an official policy, custom or practice of transferring inmates and detainees with medical concerns to other facilities without taking proper efforts to ensure the receiving facility could and would provide appropriate and necessary medical care to the transferred inmates and detainees.

226. As a result of the aforementioned policy, practice or custom, Defendants Santa Fe County and Caldwell, their agents, representatives or employees failed to prevent the transfer of

Ms. Gambler to a facility unable or unwilling to provide the appropriate and necessary medical care to attend to her serious medical needs, thereby causing Ms. Gambler to suffer cruel and unusual punishment and violation of her right to due process, ultimately resulting in her death.

227.    The risk that inmates and detainees with serious medical needs will be endangered when inadequate steps are taken to ensure the facility in which they are being transferred to is capable and willing to provide necessary medical diagnosis, treatment and care is a grave risk and the need for proper training and procedures to guard against the same is obvious. Despite this risk, Defendants Santa Fe County and Caldwell did not arrange for proper training and procedures, thereby displaying an official custom, policy or practice which was deliberately indifferent to the rights of Ms. Gambler and other inmates and detainees transferred to facilities incapable or unwilling to provide appropriate medical treatment such as the RACADF.

228.    Defendants Rio Arriba County, DeYapp, Manzanares, J. Martinez, Mercure, Deaguero, and Jordan ("Rio Arriba Supervisory Defendants") were aware that persons subjected to incarceration or detention can have serious medical needs that require immediate diagnosis and access to appropriate medical care. Despite this awareness, said Defendants failed to properly train and supervise their employees and agents to implement and maintain proper procedures to stop preventable harm to individuals subjected to incarceration or detention with serious medical needs such as requiring immediate full medical screening and diagnosis, and providing access to appropriate and necessary medical care, including referrals and transport for persons subject to custody that required medical attention and care from specialists unavailable to inmates and detainees at the RACADF.

229.    The Rio Arriba Supervisory Defendants were aware the RACADF did not have appropriate medical facilities or capabilities to provide necessary medical care for inmates and

detainees with serious medical needs such as Ms. Gambler. Nevertheless, said Defendants failed to properly train and supervise their employees and agents to implement and maintain proper procedures to stop preventable harm to individuals potentially subject to custody under their authority such as requiring immediate full medical screening and access to appropriate and necessary medical care for serious medical needs.

230.     The Rio Arriba Supervisory Defendants maintained an official policy, custom or practice of transporting individuals to, or incarcerating or detaining individuals at, the RACADF without providing appropriate, necessary and timely medical care for serious medical needs of inmates and detainees at the RACADF.

231.     As a result of the aforementioned policy, practice or custom, the Rio Arriba Supervisory Defendants, their agents, representatives or employees transported and held Ms. Gambler in custody without providing appropriate, necessary and timely medical diagnosis and care for her serious medical needs, thereby causing Ms. Gambler to suffer cruel and unusual punishment and violation of her right to due process, ultimately resulting in her death.

232.     The risk that inmates and detainees with serious medical needs will be endangered when inadequate steps are taken to ensure timely access to necessary medical diagnosis, treatment and care is a grave risk, and the need for proper training and procedures to guard against the same is obvious. Despite this risk, the Rio Arriba Supervisory Defendants did not arrange for proper training and procedures, thereby displaying an official custom, policy or practice which was deliberately indifferent to the rights of Ms. Gambler and other inmates and detainees transported to RACADF and held in custody thereat.

233.     There is a causal connection between the Defendants Rio Arriba County, Santa Fe County, Caldwell, DeYapp, Manzanares, J. Martinez, Jordan, Mercure and Deaguero's failure to

properly hire, train, supervise, retain, and admonish their employees and agents, and the custom, policy or practices outlined above and the violation of Ms. Gambler's constitutional rights.

234.    The custom, policy or practices of the afore-mentioned Defendants outlined above amount to deliberate indifference.

235.    The acts and omissions of the afore-mentioned Defendants were intentional, willful, wanton, and with malice.

236.    The acts and omissions of the afore-mentioned Defendants caused Ms. Gambler to suffer damages and death.

## COUNT SEVEN
### (Claim Against Defendant Southwest Medical for
### Failure to Provide Medical Treatment)

237.    There are well-established rights prohibiting the cruel and unusual treatment of prisoners as set forth by U.S. Const. amend. VIII and N.M. Const. art. II, §13.

238.    Prohibited cruel and unusual punishment includes a deliberate indifference to the serious medical needs of prisoners. *Estelle v. Gamble*, 429 U.S. 97 (1976).

239.    As a provider of medical services for inmates and detainees in custody at the RACADF, Defendants Southwest Medical and John/Jane Doe 1 were operating as state actors under the color of law.

240.    Defendants Southwest Medical and John/Jane Doe 1 acted as gate-keepers for individuals brought to RACADF for incarceration or detention and made initial determinations as to medical fitness for detention and determinations as to referral of inmates and detainees to medical specialists or appropriately-equipped medical facilities for the medical treatment of serious medical needs of inmates and detainees in the custody and care of the RACADF.

241.    Ms. Gambler arrived at the RACADF with a serious medical condition that required

immediate treatment.

242.    Defendants Southwest Medical and John/Jane Doe 1 knew or should have known that Ms. Gambler arrived at the RACADF with a serious medical condition that required immediate treatment.

243.    Defendants Southwest Medical and John/Jane Doe 1 knew or should have known that it was necessary to refer Ms. Gambler to a medical specialist or an appropriately-equipped medical facility.

244.    Despite the obvious need for referral to a medical specialist or an appropriately-equipped medical facility, Defendants Southwest Medical and John/Jane Doe 1 completely denied care to Ms. Gambler although she presented symptoms that potentially created a medical emergency.

245.    Defendants Southwest Medical and John/Jane Doe 1 knew or should have known their inability to treat Ms. Gambler due to the seriousness of her condition and their lack of appropriate facilities or expertise, but nevertheless unnecessarily delayed referring her to an appropriately-equipped medical facility.

246.    The delay caused by the afore-mentioned Defendants in fulfilling their gatekeeper role and obtaining appropriate medical treatment for Ms. Gambler demonstrated deliberate indifference in obtaining necessary medical treatment for Ms. Gambler's serious medical condition.

247.    The delay caused by the afore-mentioned Defendants in fulfilling their gatekeeper role and obtaining appropriate medical treatment for Ms. Gambler exacerbated her injuries, unnecessarily prolonged her pain and suffering, and ultimately failed to prevent her death.

248.    The delay caused by the afore-mentioned Defendants in fulfilling their gatekeeper

role and obtaining appropriate medical treatment for Ms. Gambler caused her substantial harm.

249.    The medical fitness determination, diagnosis and treatment that the afore-mentioned Defendants provided to Ms. Gambler was patently unreasonable and so cursory as to amount to no treatment at all.

250.    Ms. Gambler suffered damages as a result of the afore-mentioned Defendants' acts and omissions.

## COUNT EIGHT
### (Vicarious Liability Against Defendant Southwest Medical)

251.    Plaintiff incorporates all the preceding paragraphs as if fully set forth herein.

252.    Southwest Medical had a duty of reasonable care to protect inmates from preventable death while in their care.

253.    Southwest Medical had a duty to exercise reasonable care in screening, hiring, training, supervising and retaining medical professionals in its employ, including John/Jane Doe 1.

254.    Defendant Southwest Medical failed to adequately screen, hire, supervise and retain medical professionals in its employ assigned to RACADF, including John/Jane Doe 1.

255.    Defendant Southwest Medical's actions and/or omissions precipitated Ms. Gambler's preventable death.

256.    The conduct of Southwest Medical was willful, intentional, wanton, or taken in utter disregard for the safety and well-being of others, including Ms. Gambler, and subjects them to punitive damages, to the extent allowed by law.

## DAMAGES

WHEREFORE, Plaintiff requests the following relief against Defendants:

A.    An award of compensatory damages, jointly and severally, as set forth above and

44

any other consequential, incidental, and special damages, under any or all of the causes of action, in an amount to be determined at the trial of this case;

     B.     An award of pre- and post-judgment interest on any amounts recovered herein;

     C.     The costs of the action herein; and

     D.     Such other and further relief as the Court may deem appropriate under the circumstances.

Respectfully submitted,

ROTHSTEIN DONATELLI LLP


  */s/ Carolyn M. Nichols*
Carolyn M. "Cammie" Nichols
500 4th Street, NW, Suite 400
Albuquerque, New Mexico 87102
(505) 243-1443
cmnichols@rothsteinlaw.com

and

Paul M. Linnenburger
1215 Paseo de Peralta
Post Office Box 8180
Santa Fe, New Mexico 87504-8180
(505) 988-8004
plinnenburger@rothsteinlaw.com

*Attorneys for Plaintiff*